## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| KENNETH SIMMONS,                              ) | |
| )  | |
|     Plaintiff,                           ) | |
| )  | |
| v.                                            ) | No. 20-cv-3243 |
| )  | |
| ILLINOIS DEPARTMENT OF                        ) | |
| HUMAN RIGHTS,                                 ) | |
| )  | |
|     Defendant.                          ) | |
| )  | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on Defendant Illinois Department of Human Rights' Motion to Dismiss (d/e 6) the pro se complaint filed by Plaintiff Kenneth Simmons.  For the reasons that follow, the Motion is GRANTED.

## I. INTRODUCTION

On September 16, 2020, Plaintiff Kenneth Simmons, proceeding pro se, filed a four-count complaint alleging the Illinois Department of Human Rights (the Department) violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §12101 et

seq., as well as Simmons' rights under the First Amendment and the Due Process Clause.

The Department moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Department asserts Simmons lacks standing to seek prospective relief, lacks standing on Counts II and III, and fails to state a claim on all counts.

## II. BACKGROUND

Simmons' claims primarily relate to a fact-finding conference held by the Department under the Illinois Human Rights Act. By way of background, the Illinois Human Rights Act prohibits discrimination in connection with employment, real estate transactions, access to financial credit, availability of public accommodations, and education. See 775 ILCS 5/2-101 et seq. (2020), 5/3-101 et seq., 5/4-101 et seq., 5/5-101 et seq., 5/5a-101 et seq.; see also 775 ILCS 5/6-101 (additional civil rights violations); Blount v. Stroud, 232 Ill.2d 302, 309 (2009). Under the Act, a person who believes that he has been discriminated against has an administrative process to enforce the right to be free from such discrimination. See Cooper v. Bombela, 34 F. Supp. 2d 693, 695 (N.D. Ill. 1999), aff'd 196 F.3d 809 (7th Cir. 1999).

Specifically, the complainant files a charge of discrimination with the Department.  775 ILCS 5/7A-102(A).  The Department serves the respondent and conducts an investigation to determine whether the allegations are supported by substantial evidence.  775 ILCS 5/7A-102(C); 56 Ill. Admin. Code § 2520.430(a) (providing that, after a charge is filed, the Department "shall institute an investigation to ascertain the facts relating to the civil rights violation as alleged in the charge and any amendments").  As part of its investigation, the Department may hold a fact-finding conference for the purpose of obtaining evidence, identifying the issues, ascertaining the parties' positions, and exploring the possibility of settlement.  56 Ill. Admin. Code § 2520.440(a); 775 ILCS 5/7A-102(C)(4) (providing the Department shall conduct a fact-finding conference except in certain circumstances).  "No tape recording, stenographic report or other verbatim record of the conference can be made."  56 Ill. Admin. Code § 2520.440(c); see Cooper, 34 F. Supp. 2d at 695 (noting the parties and investigator are permitted to take notes).

Each charge investigated "shall be the subject of a report to the Director."  775 ILCS 5/7A-102(D)(1).  The report is a

confidential document subject to review by the parties.  775 ILCS 5/7A-102(D)(1).  The Director determines whether there is substantial evidence that an alleged civil rights violation has been committed.  775 ILCS 5/7A-102(D)(2).  If the Director determines there is not substantial evidence, the Director dismisses the charge and gives the complainant notice of his right to seek review before the Commission or commence a civil action in the appropriate circuit court.  775 ILCS 5/7A-102(D)(3).  If the Director determines there is substantial evidence, the Director gives notice to the parties of the complainant's right to commence a civil action in the appropriate circuit court or to request that the Department file a complaint with the Human Rights Commission on the complainant's behalf.  775 ILCS 5/7A-102(D)(4) (also providing that if the complainant fails to timely request the Department to file the complaint, the complainant may file his complaint with the Commission or commence a civil action in the circuit court).  When a complaint is filed with the Commission, the Commission holds a hearing that provides the opportunity to examine and cross-examine witnesses, the testimony is made under oath, and a transcript is made, and the testimony is subject to the same rules

of evidence that apply in Illinois courts in civil cases.  775 ILCS
5/8A-102(G).

### III. FACTS ALLEGED IN THE COMPLAINT

The Complaint here contains the following allegations.
Simmons has osteoarthritis in his back, both hips, both knees, and
a wrist.  Compl. ¶ 9.  Simmons has used a physician-prescribed
mobility device for the past sixteen years.  Id. at ¶ 16.  The Illinois
Secretary of State issued Simmons a permanent disability parking
placard in November 2018.  Id. at ¶10.

Simmons uses, as prescribed by a family doctor, "high
concentrated THC" to help with the pain related to his disability.
Id. at ¶ 6.  He also takes tizanidine to "control muscle spasms
related to his joint diseases both myalgia and myositis that are
related to his ADA qualifying condition."  Id. at ¶ 8.  Simmons takes
diclofenac for his osteoarthritis.  Id. at ¶ 9.  The THC, tizanidine,
and diclofenac make Simmons drowsy and cause him to fall asleep.
Id. at ¶¶ 7, 8, 9.

On February 14, 2020, Simmons requested from the
Department an accommodation to allow him to participate in the
telephone fact-finding conference that was between Simmons and

the Village of Minier.  <u>Id.</u> at ¶ 14.  Specifically, Simmons stated, via email:

> With the amount of medical cannabis I use legally and muscle relaxers it[']s hard for me to write notes or keep up during conversations sometimes so recording the phone call is best for me so I can review it when [I'm] not very medicated and will ask a court to intervene if needed.  You must provide case law and statute as to why I can not record.

<u>Id.</u>, Ex. (d/e 1, at 10).  A second email provided, "Ada [<u>sic</u>] request. My meds are directly related to my disability and this is a[n] ADA request below."  <u>Id.</u>  Simmons alleges he intended to have his wife turn on her cell phone while she sat in the living room with him. Compl. ¶ 17.  He also alleges a stay-at-home order prevented others from leaving the house to help him and prevented him from leaving his home for help with the conference.  <u>Id.</u> at ¶ 13.

The fact-finding conference occurred on April 7, 2020.  <u>Id.</u> at ¶ 19.  The Department refused Simmons' request for an accommodation during the fact-finding conference when the Department declared, after confirming Simmons still intended to record the conference, that "Plaintiff is being uncooperative."  <u>Id.</u> The Department hung up but continued the fact-finding conference with the Village of Minier employees, attorneys, paralegals, and

other employees monitoring the conference.  Id.  Simmons also alleges he refused to discuss a settlement and told all parties he would hang up if the subject were brought up during the fact-finding conference.  Id. at ¶ 18.

In Count 1, Simmons alleges he has a qualifying disability pursuant to the ADA and was denied a reasonable accommodation to record the fact-finding conference.  Compl. ¶¶ 17, 19.  He seeks $75,000 in damages, a finding that the Department violated the ADA, and an order preventing the Department from committing further ADA violations.  Id. at ¶¶ 20-24.

In Count 2, Simmons alleges the Department has a policy, practice, or procedure of telling persons with disabilities they are not entitled to disability parking and an access aisle for their mobility devices in parking lots open to the public.  Compl. ¶ 25. Simmons seeks $75,000 in damages, a finding that the Department violated the ADA, and an order preventing the Department from committing further ADA violations.  Id. at ¶¶ 27-31.

In Count 3, Simmons alleges the Department has a policy, practice, or procedure as an administrative review agency of telling public bodies that they do not have to provide persons with

disabilities with disability parking or an access aisle for mobility devices in parking lots open to the public.  Compl. ¶ 32.  Based on this policy, practice, or procedure, public bodies have refused to provide disability parking for persons with disabilities in parking lots open to the public.  Id. at ¶ 33.  Simmons seeks $75,000 in damages, a finding that the Department violated the ADA, and an order preventing the Department from committing further ADA violations.  Id. at ¶¶ 35-39.

In Count 4, Simmons alleges that the Department refused to allow him to lawfully record the fact-finding conference on April 7, 2020, and the Department hung up on Simmons because Simmons engaged in constitutionally protected speech.  Id. at ¶¶ 40-41. Simmons was not allowed to record and review public officials doing their public duties "while he slept, gathered his thoughts etc. or attempted to follow along during the conference or to review later or post on social media."  Id. at ¶ 43.  Simmons alleges he wanted to make sure the public officials were doing their jobs, and the Department did not want the public to see they were violating the ADA and not doing their job.  Id. at ¶¶ 45-46.  The conference was recorded until the Department hung up.  Id. at ¶ 47.  The call was

posted on YouTube on May 7, 2020, and the Department is aware the call is on YouTube.  Id. at ¶¶ 48, 49.  Simmons has not been questioned by law enforcement about the recording.  Id. at ¶ 49. Simmons seeks $75,000 in damages, a declaratory judgment, a finding that the Department violated Simmons' due process or First Amendment rights, and an order preventing further violations.  Id. at ¶¶ 50-54.

## IV. ANALYSIS

Simmons brings three of his claims pursuant to the ADA, which prohibits discrimination in three major areas: employment (Title I), public services, programs, and activities (Title II), and public accommodations (Title III).  See Tennessee v. Lane, 541 U.S. 509, 516-17 (2004).  Title II "prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities." Id. at 517 (citing 42 U.S.C. § 12131-12134) (noting Title II authorizes private citizens to bring suits for money damages).  A public entity includes "state and local governments, as well as their agencies and instrumentalities."  Id. (citing 42 U.S.C. § 12131(1)). A qualified person with a disability is:

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

The Court interprets Simmons' claims in Counts I through III as being brought under Title II of the ADA and interprets the claims in Count IV as being brought under 42 U.S.C. § 1983.  The Department seeks dismissal of all four counts of Simmons' Complaint.

## A.    The Court Sua Sponte Dismisses Count IV

The Court dismisses Simmons' claim in Count IV, brought pursuant to Section 1983, because the Department is immune under the Eleventh Amendment.

The Eleventh Amendment "bars federal jurisdiction over suits brought against a state, not only by citizens of another state or foreign state, but also by its own citizens."  MCI Telecomm. Corp. v. Ill. Bell Tel. Co., 222 F.3d 323, 336 (7th Cir. 2000).  The Eleventh Amendment applies "regardless of the nature of the relief sought."

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 1000 (1984).

The Eleventh Amendment applies unless the states unequivocally waive the protections of the Eleventh Amendment and consent to suit in federal court or Congress abrogates the states' Eleventh Amendment immunity.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 47 (1996) (citing Ex Parte Young, 209 U.S. 123, 162 (1908)).  Illinois has not unequivocally waived the protections of the Eleventh Amendment, and Congress has not abrogated the state's Eleventh Amendment immunity by enacting § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The immunity afforded to the states extends to state agencies. Kroll v. Bd. of Trs. of Univ. of Ill., 934 F.2d 904, 907 (7th Cir. 1991). Because the Department is a state agency, Simmons' Section 1983 claims are barred by the Eleventh Amendment.  See Cooper v. Ill. Dep't of Human Servs., No. 17-cv-1368-DRH-SCW, 2018 WL 2933482, at *2 (S.D. Ill. June 12, 2018), aff'd as mod., 758 F. App'x 553 (2019).  The Court, therefore, dismisses Count IV with prejudice.

**B.  Simmons Failed to Allege Standing to Seek Prospective Injunctive Relief in Counts I and IV and Standing to Pursue Counts II and III**

The Department argues Simmons lacks standing to seek prospective injunctive relief in Counts I and IV and lacks standing to pursue Counts II and III.  The Department brings a facial challenge to subject matter jurisdiction because the Department asserts the allegations in Simmons' Complaint are insufficient to show standing.  See Silha v. Act, Inc., 807 F.3d 169, 173  (7th Cir. 2015) (explaining a facial challenge argues the plaintiff has not sufficiently alleged subject matter jurisdiction while a factual challenge argues that, even if the pleadings were sufficient, there is in fact no subject matter jurisdiction).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When reviewing a facial challenge, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.  Silha, 807 F.3d at 173, 174 (noting the court uses the Twombly-Iqbal plausibility requirement when evaluating facial challenges to subject matter jurisdiction).

A plaintiff must demonstrate standing for each type of relief he seeks.  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).  To have standing, an individual must meet three requirements: (1) the individual must have suffered an injury in fact that is both (a) concrete and particularized and (b) actual or imminent; (2) the injury must be fairly traceable to the challenged actions; and (3) it must be likely that a favorable decision will redress the injury.  Sierra Club v. Franklin Cty. Power of Ill., LLC, 546 F.3d 918, 925 (7th Cir. 2008); see also Spokeo, Inc. v. Robins, 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016).  To survive the Department's motion to dismiss for lack of standing, Simmons must plead "sufficient factual allegations, taken as true, that 'plausibly suggest' each of these elements."  Berger v. Nat'l Collegiate Athletic Ass'n, 843 F.3d 285, 289 (7th Cir. 2016).  Pro se complaints are liberally construed.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

The Department first argues Simmons lacks standing to seek prospective injunctive relief in Counts I and IV because the counts are based on an incident that occurred during the April 7, 2020 fact-finding conference.  The Department asserts this was a singular event that began and ended on the same day and Simmons

makes no allegations that he will likely attend another fact-finding conference via phone or that the Department is likely to take similar discriminatory actions in the future.  The Court agrees.

"[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights."  Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013) (finding the plaintiff alleged standing where she stated she would use the hotel but for the continuing ADA violations there in light of her past travel history and desire to stay at the hotel despite the violations).  Past exposure to illegal conduct does not alone show a present case or controversy for purposes of injunctive relief, unless accompanied by continuing, present adverse effects.  O'Shea v. Littleton, 414 U.S. 488, 495 (1974) (wherein the court was "unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws").  Simmons makes no such allegations here.  That Simmons will again be involved in a telephone fact-finding conference during a lockdown is not alleged and entirely speculative.  Because he has not alleged a real and

immediate threat of future violations of his rights, Simmons has not alleged standing for his claims for prospective injunctive relief in Counts I and IV.  Therefore, those claims for relief are dismissed without prejudice.

The Department also argues Simmons lacks standing to pursue Counts II and III because he fails to allege the Department's policies affect him in a personal way.  Again, the Court agrees.

In Counts II and III, Simmons alleges the Department has a policy, practice, or procedure of (1) telling persons with disabilities they are not entitled to disability parking and an access aisle (Count II) and (2) telling public bodies they do not have to provide the persons with disabilities with disability parking and an access aisle (Count III).  He further alleges in Count III that public bodies have refused to provide the same based on the practice, policy, or procedure.  Compl. Counts II, III.

Missing from the Complaint are any allegations that Simmons suffered an injury in fact that is fairly traceable to the Department's policy, practice, or procedure.  He does not allege he has been personally injured in any way.  See, e.g., Baaske v. City of Rolling Meadows, 191 F. Supp. 2d 1009, 1014 (N.D. Ill. 2002) (finding the

plaintiff did not meet the constitutional standing requirement where he did not allege he had been injured in any way but only alleged a group of disabled persons might be injured by the firehouse renovation).

Specifically, in Count II, Simmons does not allege an injury in fact that is traceable to the Department's alleged actions such that a favorable decision would redress the injury.  Simmons does not allege the Department told Simmons he was not entitled to disability parking or access aisles in parking lots open to the public, that he was denied disability parking or access aisles in parking lots open to the public, or how he was harmed by such policy, practice, or procedure.  In Count III, Simmons does not allege that he has suffered an injury, such as being denied disability parking or use of access aisles by a public body based on advice received from the Department.

In his response to the motion to dismiss, Simmons states, "I was denied handicap parking based upon the IDHR policy."  Pl. Resp. at 1 (d/e 13).  The Court can consider allegations made and exhibits attached in response to a motion to dismiss if they are consistent with the allegations of the complaint.  See Smith v. Dart,

803 F.3d 304, 311 (7th Cir. 2015); <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997).  However, Simmons' statement is merely a conclusory allegation that is not entitled to the presumption of truth afforded to well-pleaded facts.  <u>See</u> <u>United States ex rel. John v. Hastert</u>, 82 F. Supp. 3d 750, 766 (N.D. Ill. 2015) ("Legal conclusions and conclusory allegations that merely recite the elements of a claim, like this allegation, are not entitled to the presumption of truth afforded to well-pleaded facts.").  Simmons has failed to allege standing in Counts II and III, and those counts are dismissed without prejudice.

**C.    Simmons Fails to State a Claim in Counts I, II, and III**

The Department also argues Simmons fails to state a claim in Counts I, II, and III.

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  <u>Christensen v. Cnty. of Boone, Ill.</u>, 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving the defendants fair notice of the claims. <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor.  Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

The Department argues that Counts I, II, and III should be dismissed for failure to state a claim pursuant to Title II of the ADA. To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied the benefits of, a public entity's services, programs, or activities, or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was because of his disability.  See P.F.

by <u>A.F. v. Taylor</u>, 914 F.3d 467, 471 (7th Cir. 2019); <u>Toledo v.</u>

<u>Sanchez</u>, 454 F.3d 24, 31 (1st Cir. 2006).  A Title II claim "may be

established by evidence that (1) the defendant intentionally acted on

the basis of the disability, (2) the defendant refused to provide a

reasonable modification, or (3) the defendant's rule

disproportionally impacts disabled people."  <u>Wis. Cmty. Servs., Inc.</u>

<u>v. City of Milwaukee</u>, 465 F.3d 737, 753 (7th Cir. 2006) (<u>quoting</u>

<u>Washington v. Ind. High Sch. Athletic Ass'n, Inc.</u>, 181 F.3d 840,

846 (7th Cir. 1999)).  Simmons alleges the Department failed to

provide a reasonable accommodation.

The Department argues Simmons failed to sufficiently allege a

claim in Count I because he is not an "individual with a disability"

and he failed to allege he was excluded from the conference

"because of" his disability.  Under the ADA, an individual is not an

"individual with a disability" if he is "currently engaging in the

illegal use of drugs, when the covered entity acts on the basis of

such use."  42 U.S.C. § 12210(a).  The "illegal use of drugs" is

defined as follows:

(1) In general

The term "illegal use of drugs" means the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act.  Such term does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

(2) Drugs

The term "drug" means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act.

42 U.S.C. § 12210(d) (emphasis added).

The Ninth Circuit determined, in James v. City of Costa Mesa, 700 F.3d 394, 397 (9th Cir. 2012), that the use of medical marijuana constitutes the illegal use of drugs under § 12210.  In James, the plaintiffs argued the language in the statute created two exceptions from the illegal drug exclusion: (1) an exception for drug use supervised by a licensed healthcare professional carried out under any legal authority, including state authority and (2) an exception for drug use authorized by the Controlled Substances Act or another federal law.  Id. at 398.  Under the plaintiffs' interpretation, state-sanctioned, doctor-recommended use of marijuana is a covered use under the supervised use exception.  Id. The defendants argued the statute created one exception covering

all uses authorized by the Controlled Substances Act (which

authorizes uses that involve professional supervision or uses in

connection with research and experimentation) or other provisions

of federal law.  Id.

The Ninth Circuit agreed with the defendants and found that

the use of medical marijuana did not fall within the supervised use

exception of the statute (§ 12210(d)(1)) based on the text, the

legislative history of the ADA, and the relationship between the ADA

and the Controlled Substances Act.  Id. at 398, 404.  The court

found that Congress intended to define "illegal use of drugs" by

reference to federal, not state law.  Id. at 399.  The court further

found that "[t]o conclude that use of marijuana for medical

purposes is not an illegal use of drugs under the ADA would

undermine the [Controlled Substances Act's] clear statement that

marijuana is an unlawful controlled substance that has 'no

currently accepted medical use in treatment in the United States.'"

Id. at 402 (quoting 21 U.S.C. § 812(1)(B)).

This Court agrees with the reasoning of the James court.  The

Controlled Substances Act continues to define marijuana as a

Schedule I controlled substance that "has no currently accepted

medical use in treatment in the United States."  21 U.S.C. § 812(b)(1)(B), § 821(c)(a)(10).  As noted above, an individual with a disability does not include an individual who is currently engaging in the illegal use of drugs when the covered entity acts on the basis of such use.  Simmons alleges the Department acted on the basis of his use of marijuana by failing to accommodate the side effects of his use of marijuana.  As such, Simmons has failed to allege he is an individual with a disability.

The Court acknowledges that Simmons also alleges the use of various prescription medications—tizanidine and diclofenac—also contributed to his fatigue and necessitated his requested accommodation.  However, because the alleged denial of his requested accommodation was based in part on the use of medical marijuana and Simmons being uncooperative (insisting on recording after being told he could not), Simmons also does not sufficiently allege the discrimination to have occurred due to his disability.  See Wis. Cmty. Servs., 465 F.3d at 754 (noting that a plaintiff must show that "but for" his disability, he would have been able to access the services or benefits desired); Ibrahim v. Cty. of Los Angeles, No. 2:18-cv-6013-CBM-SK, 2019 WL 3064424, at * 2

(C.D. Ca. May 3, 2019) (finding the plaintiff failed to state a claim where her children were removed due to a positive drug test caused by Norco and medical marijuana because the ADA requires the discrimination to have occurred solely because of a disability and the discrimination was based, at least in part, on the use of medical marijuana).

The Department also argues Simmons has failed to state a claim in Counts II and III because he fails to allege he was excluded from or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination.  The Department argues Simmons does not allege he was denied the benefit of parking or the use of access aisles at one of the Department's facilities or by a public body which acted on the Department's advice.

Although the Court dismissed Counts II and III for lack of standing, the Court also finds Counts II and III fail to state a claim. Simmons' allegations in Counts II and III are wholly conclusory and do not state a claim.  Mere recitation of the elements of a claim is insufficient to state a claim.  Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010) ("To survive a motion to dismiss,

the plaintiff must do more than simply recite the elements of a claim"). Therefore, Counts II and III are also dismissed without prejudice for failure to state a claim.

## V. CONCLUSION

For the reasons stated, the Department's Motion to Dismiss (d/e 6) is GRANTED. Counts I, II, and III are dismissed without prejudice and with leave to amend. Count IV is dismissed with prejudice. Simmons shall file any amended complaint on or before October 28, 2021. The Department shall file an answer or otherwise plead to the amended complaint (if one is filed) or answer the original complaint (if an amended complaint is not filed) on or before October 28, 2021.

**ENTERED: September 28, 2021**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**